## ANCIENT ORDER OF UNITED WORKMEN et al. v. MILAM.

No. 26302. June 8, 1937.

Rehearing Denied Sept. 14, 1937.

W. B. Wall, for plaintiffs in error.

G. L. Bynum, for defendant in error.

PER CURIAM. The plaintiff filed his action May 19, 1934, against the defendant Ancient Order of United Workmen, and against Josephine Milam, as administratrix of the estate of John Edward Milam, deceased, and alleged: That he is the father of the deceased and Josephine Milam is the mother of the deceased, and that she has been appointed administratrix of his estate; that during the lifetime of the said deceased, he carried an insurance policy or benefit certificate in the Ancient Order of United Workmen, as this plaintiff believes, was a member of Lodge No. 47 of McAlester, Okla., and that the Grand Lodge of said order is located at Guthrie, Okla.

"That said insurance policy or benefit certificate designated both W. H. Milam and Josephine Milam beneficiaries, and upon death of said deceased, said policy became payable to both of them in equal parts, said policy being for the sum of $1,000 and his father and mother being entitled to $500 each.

"That since the death of said deceased, and appointment of said Josephine Milam as administratrix of his estate, by some kind of collusion, fraud, and conspiracy by and between the defendants, and in

order to defeat this plaintiff of his just rights and dues, some kind of a settlement, the exact nature of which is unknown to this plaintiff, had been made or entered into, or at least attempted by the defendant herein, whereby she is seeking to get and the said insurance company is trying to aid her to get, the entire amount paid and to be paid under said insurance policy."

That the defendant Ancient Order of United Workmen is engaged in the insurance business in the state of Oklahoma, and that defendants or one of them has possession of the insurance policy, and plaintiff is unable to attach a copy of his petition, and he prays for judgment against both defendants for $500.

The defendant Josephine Milam answered by general denial, except the admission that she is the duly appointed and acting administratrix of the estate of John Edward Milam, deceased, and that said deceased in his lifetime was the owner of an insurance policy, such as is alleged in the petition, and she specifically denies that she has been guilty of any fraud, deception or collusion with the insurance company in regard to said policy or that anything has been paid to her personally or as such administratrix for or by reason of the death of her son, John Edward Milam.

The other defendant answered, denying generally all the allegations of the petition except such as are specifically admitted, and admits the relationship of the plaintiff and Josephine Milam to the deceased, and the appointment of Josephine Milam as administratrix, and further admits that during the lifetime of John Edward Milam a beneficiary certificate for $1,000 in said defendant was issued to him, but states that said member was affiliated with Dewar Lodge No. 109 and not McAlester Lodge No. 47, and that said beneficiary certificate designated both W. H. Milam and Josephine Milam as beneficiaries thereof in equal parts, and admits that said defendant at the time mentioned was a fraternal insurance society engaged in the insurance business in Oklahoma.

The defendant admits that a settlement of all property rights arising by reason of said beneficiary certificate have been effected between such defendant and the administratrix of the estate of said member, but denies that such settlement was reached by means of any collusion, fraud or conspiracy or intent to defeat plaintiff in his rights, or that it has attempted to aid its codefendant

in seeking to obtain the entire amount paid or to be paid under such certificate.

Further answering, said defendant alleges that the benefit certificate issued to the deceased was for the sum of $1,000 and issued on October 1, 1927, and attaches a copy thereof to its answer; that the premium and dues thereof were paid by the member on the monthly premium of $1.98 per month, and that the last dues paid by said member were for the month of July, 1931, and said member became suspended for nonpayment of premium on August 1, 1931; that said member borrowed $15.32 on May 25, 1931, which has never been repaid; that said member died on February 11, 1934, and that long prior to his death, said loan, the interest thereon, and the monthly premiums on said certificate, had consumed all of the reserve fund to the credit of said certificate and said certificate was lapsed, void and of no effect at the time of his death.

That about April 1, 1934, the answering defendant, being convinced by the application of Josephine Milam, administratrix of the estate of said member, for the payment of permanent total disability benefits under said certificate and the accompanying proofs, that the said member had become permanently and totally disabled at a time when said certificate was in good standing and prior to his death, made complete settlement of such disability claim with the administratrix on April 21, 1934, and that said certificate was thereupon surrendered to the defendant in payment of said disability claim.

No reply was filed to this answer; the cause was tried to a jury and plaintiff's evidence is very brief and is in substance as follows:

That he is the father of said deceased member and Josephine Milam is his mother; John Edward was 25 years old and single when he died and had never married, and he was the only child of Josephine and W. H. Milam and that the plaintiff and Josephine Milam are the only heirs; that John Edward served 22 months in the hospital at Oklahoma City, and the plaintiff took him to Oklahoma City and brought him back. He was asked, "Did you help pay the premiums on this policy?" to which he replied "Yes, sir, when he was working he paid it, and when he was not, I paid it." That the plaintiff never received any money by virtue of this policy and that he and Josephine are not husband and wife, having been divorced something like two years before the trial.

On cross-examination plaintiff testifies that John Edward died February 11, 1934, and that he was totally disabled something like two years or close to three years from the time he was taken sick; that the brain tumor with which John Edward was afflicted first showed up or began to affect him about three years before his death; that he had never received anything from the administratrix; that he talked to her about a settlement before "she went into court with this. She said, 'What I collect, if it's a thousand dollars, I will keep it,' said, " 'I'll lose every dime before you should have a dime.' I said, 'Go ahead' and she did alright, she went ahead and kept the money."

On redirect examination, the plaintiff testified that Anton Koch was the boy's attorney. The plaintiff was then asked, "You and your wife both carried papers to him, did you not?" to which the plaintiff replied, "Yes, sir, and he held them seven or eight months and declared he couldn't get anything out of them."

"The Court: They were notified as to his total disability before he died? A. Yes, sir. Mr. Bynum: Was that quite a while before he died? A. Yes, sir, quite a while."

The plaintiff introduced in evidence the beneficiary certificate issued to the deceased, John Edward Milam, on October 1, 1927, the pertinent provisions of which are as follows:

"3rd. Total Permanent Disability. If the member, after making all required payments for at least one full year, and provided all past due payments have been duly made, shall before attaining the age of sixty years, and while this contract is in full force, become totally and permanently disabled, whether by accident or disease, and if the fact and cause of such total and permanent disability shall be proved to the satisfaction of the Grand Lodge upon blanks provided for that purpose wherein application may be made for this benefit, the Grand Lodge of Oklahoma, Ancient Order of United Workmen, will either (a) pay to the member one-half of the Face Amount of this contract as a total permanent disability benefit, upon surrender of this contract properly receipted; or (b) during the continuance of such disability will waive all future regular payments which otherwise would have become payable hereunder. * * *

"5. Non-Forfeiture. When all payments required under this contract of insurance shall have been duly made for a period of thirty-six months (three years) or more, and default thereafter occurs in any payment when due, the member shall be entitled to any one of the following options (a), (b) or (c), as shown respectively in the table of surrender values included herewith, said option to be: (a) To surrender this contract for its cash value; or (b) to surrender this contract for paid-up life insurance (without the double indemnity benefit); or (c) to have the insurance hereunder continued as term insurance (without the double indemnity benefit) for its Face Amount.

"The cash value under option (a) shall be the reserve for the reserve for the Face Amount of this contract, less a surrender charge of one per cent. of such Face Amount; and the paid-up life insurance under option (b), or the extended term insurance under option (c) shall be the equivalent of the same cash value applied as a net single premium at the attained age of the member at date of default. * * *

"(check) 8th. Re-Instatement. Unless it shall have been surrendered for its cash value. or unless the term for which the insurance has been extended shall have expired, this contract may be reinstated at any time within three years from date of default in any payment required hereunder, upon evidence of insurability satisfactory to the Grand Lodge, and upon payment of all arrearages with interest thereon at the rate of five per cent. per annum; provided that any indebtedness existing at the date of default be first paid or reinstated with interest from that date at five per cent. per annum."

The policy also provided that the same might be surrendered by the member without consent of the beneficiaries and a new contract issued, payable to such other beneficiary as shall have been designated by the member. The table of cash loan values appended to said certificate shows such values to be as follows:

"After three years, $15.32; * * * After six years, $57.65."

Plaintiff then introduced in evidence the records of the county court of Okmulgee county showing the appointment of Josephine Milam as administratrix of the estate of John Edward Milam, deceased on March 28, 1934.

After the plaintiff rested, the defendant demurred to the evidence, which was overruled and exceptions saved.

The evidence of the defendant, while apparently uncertain and contradictory in some instances, conclusively shows as follows:

That no claim for death was ever made to the society by anyone; that no payments of premium upon the benefit certificate were made after July, 1931; that the certificate was issued October 1, 1927, and the month-

ly premium was $1.98; that the reserve upon this certificate at the end of the sixth year, October 1, 1933, was $57.65; that on May 25, 1931, the member borrowed $15.32 out of said reserve, or the cash value of said certificate at the end of the third year; that the net unencumbered reserve on said certificate on October 1, 1933, was $42.33; that there was chargeable against the member at that time the sum of $51.48, in unpaid premium, and that on October 31, 1933, or near that date, the reserve upon said certificate was more than exhausted; that on September 27, 1933, the society notified the member of this fact, and that unless 'all arrearages were paid and the member reinstated, the liability of the society would cease at the end of 30 days; There is no claim of the reinstatement of the member, or of any effort to reinstate by anyone in his behalf; that on October 16, 1933, pursuant to the society's notice of suspension, claim was made upon the society for the payment of total permanent disability benefits under the certificate; that this claim was made by the attorney for the member at the instance of the member's mother, and that plaintiff also testified that he had consulted this same attorney concerning said certificate; that under the laws of the society a claim for total and permanent disability must be acted upon within six months from the making of said claim; that while total disability claim was made by the attorney on October 16, 1933, the conclusion of both the original and final claims was made on March 29, 1934, and the claim allowed by the society and paid to the administratrix of the estate of the member, he having died on February 11, 1934.

One of these claims, shown in the record to be the original claim, shows the member was behind in his dues, while the final claim, made at exactly the same time and sworn to before the same officer, does not so show, but, on the other hand, shows that all dues are paid. No one claims in this case that the dues were paid between the time of the making of the original proof on March 29th and the making of the final proof on March 29, 1934.

Nor does the plaintiff dispute the fact that no payments of premium were made after July 1, 1931.

Two questions may be considered as presented for determination:

1. Whether the administratrix of the estate of the deceased member had the right to make claim for permanent disability and to receive payment therefor to the exclusion of the death beneficiaries in said certificate.

2. Whether the plaintiff was entitled to recover upon the certificate as death beneficiary thereunder.

The determination of the first question would necessarily determine the latter, but because of the insistence of counsel, we have considered also the second question.

The benefit certificate in this case provides two classes of benefits:

a. Permanent disability benefits, which, by the certificate, are payable to the member.

b. Death benefits which are payable to the beneficiaries named therein.

The certificate provides that in the event of total permanent disability, and proof thereof to the satisfaction of the society upon blanks furnished for that purpose, the society will either

a. "Pay to the member one-half of the face amount of this contract as a total permanent disability benefit, upon surrender of this contract properly receipted; or

b. "During the continuance of such disability will waive all future regular payments which otherwise would have become payable hereunder."

These benefits or rights accrue to the member. Under the certificate it was optional with him to elect whether he would accept one-half of the face amount of the certificate in discharge thereof or elect to have the society waive all future payments thereunder, and continue the same in force as a life certificate.

The member having died on February 11, 1934, without having elected the benefit which he would take, any rights which he had under said certificate became the property of his estate, and under the law it became the duty of his personal representative to make and enforce claim therefor. This she did after consultation with her attorney. The personal representative might have elected to have the society waive payments due or to become due under such certificate after the member was permanently and totally disabled, but this she did not do. She elected to make claim for the payment of the total and permanent disability benefits under the certificate. Life beneficiaries under fraternal insurance certificates have no vested interest therein until the death of the member. Grand Lodge K. P. of Oklahoma v. Moore, 66 Okla. 142, 168 P. 659; 45 C. J. 257.

In B. of R. T. v. Dee, 101 Tex. 597, 111 S. W. 396, the court says:

"The Court of Civil Appeals says that J. E. Siddall had become totally disabled before the expulsion occurred, and the company became liable to pay the amount specified in the certificate. No such ground of liability was alleged in the petition. Therefore, it could not sustain the judgment. Besides, if he was totally disabled and the certificate matured in his lifetime, then Mrs. Dee never became entitled to the sum to be paid; but it was payable to Siddall himself, and upon his death, became the property of his estate."

Mrs. Dee was the beneficiary under the certificate in suit.

The personal representative of the deceased member in the case at bar evidently realized that the certificate was lapsed for nonpayment of dues, considered it her duty to procure for said estate 'all that could be procured under the certificate, and she was able to convince the society that permanent disability did occur while the certificate was in force. She made that claim; it was considered by the society and paid; and under the terms of the certificate, such payment to the personal representative of the member discharged the certificate.

We think the plaintiff below realized this to be the law, because as we read his petition it was an attempt to set aside a compromise or settlement or payment which had been made between the personal representative of the member and the society, upon the broad allegation of fraud, conspiracy and collusion. It seems to be the plaintiff's theory that such payment and settlement would be effective as a discharge of the certificate, unless set aside for fraud or collusion. Else, why the necessity of such allegations? But no word of fraud, conspiracy or collusion is disclosed, even in plaintiff's testimony, and certainly none in the testimony of the defendant.

The plaintiff's petition does not state a cause of action, even upon this theory, because no facts are alleged which constitute either fraud or conspiracy or collusion, or that the plaintiff had any rights under the certificate at the time of the institution of this action.

Nor does plaintiff's petition state a cause of action upon the certificate as a life certificate. It alleges that the deceased "carried a policy during his lifetime," but does not allege that it was in force at the time of his death, or that the provisions thereof had been fully complied with upon the part of the member. He does not reply to the allegations of the answer so as to plead a waiver of any conditions required to be performed by the member, or an estoppel upon the part of the society to allege a forfeiture or lapse thereof, and plaintiff's evidence wholly fails to support his petition even though the same be considered as stating a cause of action. It is true, the plaintiff testified that the premiums upon this certificate were paid by the member "when he was working, and when he was not working, I paid them," but he offers no testimony in rebuttal of the positive evidence of the defendant that payments of premium ceased on July 1, 1931.

We conclude that upon either theory of plaintiff's petition, he is not entitled to recover; that the payment by the society of the permanent disability benefits was a discharge of its liability under the certificate.

At the close of all the evidence, the defendant moved for an instructed verdict. This the court denied, but should have sustained.

For the reasons given, the cause is reversed and remanded, with directions to render judgment for the defendant.

The Supreme Court acknowledges the aid of Attorneys John F. Vaughan and T. A. Higgins in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Vaughan and Mr. Higgins, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

OSBORN, C. J., and BUSBY, WELCH, PHELPS, and CORN, JJ., concur. GIBSON and HURST, JJ., dissent. BAYLESS, V. C. J., and RILEY, J., absent.